*361 OPINION OF THE COURT
Rory J. Bellantoni, J.
“The purpose of the criminal justice system is, obviously, to do justice in criminal cases. This truism underlies all of the statutory schemes, courtrooms, and penal institutions that constitute the criminal justice system. The truism even affects the status of prosecuting attorneys, who are meant to seek the just result in each case and not simply a conviction and a maximum sentence.” (John F. Wirenius, A Model of Discretion: New York’s “Interests of Justice” Dismissal Statute, 58 Alb L Rev 175, 175 [1994].)
Defendant, Wolfgang Schellenbach, was arraigned on April 12, 2007 and charged with committing two counts of sexual abuse in the first degree, two counts of forcible touching, and one count of unlawful imprisonment in the second degree. Defendant entered a plea of not guilty to all charges pending therein.
The charges arise from an incident that allegedly occurred on or about February 8, 2007, at approximately 2:45 am., when defendant, restaurant/lounge owner of Café El Dorado was in the basement level of the restaurant with the complainant who alleged that she was sexually abused by defendant. The complainant alleged that defendant touched her breasts and vagina without her consent.
Defendant was arraigned on April 12, 2007; as a customary practice of the sex offense court, and all problem-solving courts, this court held an off-the-record conference on May 3, 2007. At that conference, the People, defense counsel and the court discussed the facts surrounding the case and the People’s offer — a plea to sexual abuse in the first degree with a probationary term of 10 years, and all sex offender conditions imposed. Defense counsel informed the court that his client was not interested in the offer. Defense counsel informed the court that the complainant in this case had contacted defendant in an attempt to obtain money from him in exchange for “dropping the charges.” Defense counsel further stated that there was a tape memorializing said conversation and that he had alerted the District Attorney’s Office on March 16, 2007 of these “extortion” attempts on the part of the complainant.
The People requested the tape to be turned over by defense counsel; however, defense counsel refused explaining that he *362 had been “burned” before by “this District Attorney’s Office” in an unrelated case. The court did not request nor require defense counsel to turn over the tape. At no other point during plea negotiations in the presence of the court — either on and/or off the record — did the People request to listen to or have defense counsel turn over the alleged tape. Further, the People never conditioned any plea offer on listening to the tape-recorded conversation until November 1, 2007.
On July 27, 2007 and on August 23, 2007, the court was informed that the parties were actively engaged in plea bargaining negotiations and both parties sought adjournments of the matter — the People communicated to the court that, at worst, defendant would be offered a violation, a noncriminal offense, or an adjournment in contemplation of dismissal (ACD). On September 27, 2007 the matter was calendared; the court had an off-the-record discussion where the People offered a plea to a harassment charge, a noncriminal disposition. Defendant stated he might be willing to accept the plea offer, but had to inquire with his “liquor law” attorney as to whether accepting such a disposition would affect the status and/or renewal of his liquor license. The matter was adjourned, once again, to October 18, 2007, for defendant to determine whether the proposed disposition of a plea to a violation would affect his liquor license.
On or about and between October 9, 2007 and October 11, 2007 the People requested an adjournment of the October 18, 2007 court date. When the court inquired as to the reason for the adjournment request, the People advised the court that the assigned assistant district attorney (hereinafter ADA) wished to inspect the premises where the alleged crime occurred; the ADA also advised the court that the plea offers now considered by the People were either an ACD or an outright dismissal of the entire indictment. Since the representation to the court was that a disposition was imminent in this case, the court again agreed to adjourn the matter until November 1, 2007, even though the court had been instructed by the supervising judge of the criminal courts to resolve the matter on October 18, 2007 or to send the case to the Trial Assignment Part (hereinafter TAP).
On November 1, 2007, the People stated that they needed another one-week adjournment because the approval of the *363 District Attorney herself was needed to dismiss the indictment.[1] The court advised the ADA to consult with her supervisors and to return with a firm offer of either an ACD or dismissal by the end of the day — the same offers that were being considered by the People as represented to the court in the phone communication held in October 2007. At the end of the day, all parties returned to court and the ADA stated that the District Attorney refused to make any further offers until defendant turned over the tape, and demanded that the matter be sent out for trial. Defense counsel became highly agitated, accusing the District Attorney’s Office of prosecutorial misconduct, among other things, and motion practice ensued.
Defendant has now filed the instant motion to dismiss the indictment in the interest of justice pursuant to CPL 210.40. The People oppose defendant’s motion.[2] On December 19, 2007, defendant filed a reply affirmation and on December 20, 2007, arguments were held, on the record, with respect to the instant motion. The court indicated at the conclusion of oral arguments that defendant’s motion was granted, with a written “decision and order” to follow.
A motion to dismiss in the interest of justice, more commonly referred to as a Clayton motion, grants a court the discretion to dismiss an indictment if a court finds that the “ends of justice would be served by the termination of the prosecution. Indeed, it has been stated that the use of the statute depend[s] only on principles of justice, not on the legal or factual merits of the charge or even on the guilt or innocence of the defendant.” (People v Clayton, 41 AD2d 204, 206 [2d Dept 1973] [citations *364 omitted].) A balance between the rights of the individual and the interests of the State must be maintained in considering the factors set forth by CPL 210.40 when a court considers a motion to dismiss in the interest of justice. Thus, a court has the discretion to dismiss an indictment in the furtherance of justice even when there is no basis for such dismissal as a matter of law. (CPL 210.40.) While the court has discretion, the court must find some compelling factor, consideration or circumstance demonstrating that conviction or prosecution of the defendant would constitute or result in injustice. Thus, the court must examine and consider, to the extent applicable, individually and collectively, the following factors, set forth in CPL 210.40 (1):
“(a) the seriousness and circumstances of the offense;
“(b) the extent of harm caused by the offense;
“(c) the evidence of guilt, whether admissible or inadmissible at trial;
“(d) the history, character and condition of the defendant;
“(e) any exceptionally serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant;
“(f) the purpose and effect of imposing upon the defendant a sentence authorized for the offense;
“(g) the impact of a dismissal upon the confidence of the public in the criminal justice system;
“(h) the impact of a dismissal on the safety or welfare of the community;
“(i) where the court deems it appropriate, the attitude of the complainant or victim with respect to the motion;
“(j) any other relevant fact indicating that a judgment of conviction would serve no useful purpose.”
(a) The Seriousness and Circumstances of the Offense
Defendant is presently being charged with committing two counts of sexual abuse in the first degree, two counts of forcible touching, and one count of unlawful imprisonment in the second degree. There is no arguing that these are very serious crimes as charged. However, the circumstances surrounding the offenses and the People’s stance and plea bargain negotiations with respect to the crimes charged in the indictment undermine the seriousness of the offenses such that it would seem to intimate that the People do not fully credit the complainant’s version of the events in question.
*365 The instant matter has been pending before this court since April 12, 2007. As the case progressed, the dispositional alternatives and/or plea offers got “better” for defendant as time went on — from an offer of sexual abuse in the first degree, a class D violent felony, and 10 years’ probation (with strict sex offender conditions, which could have included being unable to be in the presence of defendant’s own children) that was offered on May 3, 2007 — to a violation (harassment) that was offered on September 27, 2007, to the possibility of an outright dismissal, which was conveyed directly to the court in October 2007.
Clearly, an offer of an ACD or an outright dismissal when defendant faces a top charge of a class D violent felony, which carries a maximum sentence of seven years of imprisonment, speaks volumes as to the seriousness and circumstances of the offense. At the court proceedings on December 20, 2007, the court specifically asked ADA Lopez:
“court: Is it unreasonable given the fact that I am assigned to this part, you appear in front of me in dozens if not hundreds of cases that when Michelle Lopez comes into my part and communicates an ACD or a dismissal, that as to the seriousness and circumstances of the offense, it is an illogical assumption for me to believe this is not a serious offense, is that illogical for me to assume?
“ms. lopez: It is not — it would be more logical for the Court to assume that there may be problems with the case in terms of my ability to go forward” (transcript of proceedings, Dec. 20, 2007, at 44-45).
Again, the comments clearly speak volumes as to the “seriousness” of this case, or, rather, lack thereof.
(b) The Extent of Harm Caused by the Offense
Victims of sexual abuse not only suffer physical harm, but also suffer serious psychological and emotional consequences. In the instant case, the only specific fact alleged by the People of any harm suffered by this particular complainant (and not by victims of abuse in general) is that she was “physically upset.” (People’s mem of law at 39.) On December 20, 2007, the court specifically inquired as to this factor:
“court: I have seen problems that go from a D to an E, but an outright dismissal and then the extent of the harm caused by the offense. Again, we are coming in here and the People are offering an ACD or a dismissal, the opinion of a prosecutor who spe *366 cializes in sex crimes, there had been a tremendous amount of harm caused to this victim, am I to assume that you would ever consider offering an ACD or a dismissal, would that be a reasonable assumption on my part?
“ms. lopez: Yes.
“court: Yes what?
“ms. lopez: You indicated would it be a reasonable assumption if I came in with an offer or—
“court: That the extent of the harm caused was minimal, it was minimal?
“ms. lopez: Correct, that’s a reasonable assumption.” (Transcript of proceedings, Dec. 20, 2007, at 45.)
(c) The Evidence of Guilt, Whether Admissible or Inadmissible at Trial
The court is unable to fully address this factor, since no omnibus motion was prepared in connection with this case as it was defendant’s (and the court’s) expectation that the matter would be disposed of with a noncriminal disposition. Thus, the court did not have the benefit and opportunity to review the grand jury minutes to assess the sufficiency of the evidence presented by the People to the grand jury relative to the defendant’s guilt.
This case has been characterized as the proverbial “she said, he said” — the complainant claims she was forced down the stairs to the basement level and was sexually abused by defendant; defendant claims that any sexual contact was consensual. Moreover, during the December 20, 2007 court proceeding, the People admitted as follows:
“court: . . . you are offering a dismissal, some problems with the evidence of guilt, no?
“ms. lopez: That’s correct.” (Transcript of proceedings, Dec. 20, 2007, at 46.)
(d) The History, Character and Condition of the Defendant
Defendant is a restaurant/lounge owner of Café El Dorado in New Rochelle. Defendant does not have any prior criminal history of sexual misconduct or violent crimes. Defendant does have a misdemeanor criminal history. According to defendant’s rap sheet included in the consent discovery, defendant has two misdemeanor convictions — one on December 19, 1995 upon a plea of guilty to attempted transport of unauthorized recording *367 in the second degree which resulted in a sentence of a $150 fine and the other on January 8, 1997, in which defendant pleaded guilty to aggravated unlicensed operation of a motor vehicle in the third degree and received a $200 fine. No other convictions or open cases appear on the rap sheet provided by the People. The People do indicate in their opposition papers that there is an open trespass charge; that matter was resolved with a guilty plea to a violation, not a crime, and defendant received a conditional discharge.
(e) Any Exceptionally Serious Misconduct of Law Enforcement Personnel in the Investigation, Arrest and Prosecution of the Defendant
While the court has discussed above the chronology of the plea negotiations involving the People, defendant and the court, some facts are worth reiterating in the context of this factor. On July 27, 2007 and on August 23, 2007, the court was informed that the parties were actively engaged in plea bargaining negotiations — the People communicated to the court that, at worst, defendant would be offered a violation, a noncriminal offense, or an adjournment in contemplation of dismissal.
On September 27, 2007 the matter was calendared for a conference. The court again had an off the record conference where the People offered a plea to harassment, a noncriminal disposition. Defendant stated that while he was willing to accept such a disposition, he had to inquire of another attorney as to whether accepting a noncriminal disposition would affect the renewal status of his liquor license. Again, at no moment during this conference, or any other, did the People request or condition a disposition on listening to the tape. Nor did the People ever indicate that any plea offer was contingent upon final approval from the District Attorney herself, or anyone else.
At this September 2007 conference, the People also informed the court that back in the latter part of May 2007 the complainant had communicated to the People that she wished to drop the charges, but, in August 2007 the complainant had contacted the District Attorney’s Office and conveyed her changed position stating that she wanted to proceed with this case. Even knowing that the complainant wished to proceed in this matter, the People stated that at worst, the offer would be a plea to a violation, harassment, which is not a crime, and a permanent order of protection in favor of the complainant. The matter was adjourned to October 18, 2007 for defendant to determine whether accepting the plea offer to a harassment charge would affect his liquor license.
*368 Contrary to the People’s papers, there was no conference on October 18, 2007. In fact, ADA Lopez called the court on or about and between October 9, 2007 and October 11, 2007 requesting an adjournment of the October 18, 2007 court date. When the court inquired as to the reason for the adjournment request, the ADA advised the court that she wished to inspect the premises where the alleged crime occurred; she also advised the court that the possible dispositions now considered by the People were either an ACD or an outright dismissal of the entire indictment. Since the representation to the court was that a dismissal (either an ACD or an outright dismissal) was imminent in this case, the court agreed to adjourn the matter until November 1, 2007. Again, there was no mention of a disposition contingent upon approval of the District Attorney herself nor upon the production of an audiotape.
On November 1, 2007, the People stated that they needed another one-week adjournment because the approval of the District Attorney herself was needed to dismiss the indictment. This was the first time that the ADA ever mentioned to the court that her plea offers were contingent upon approval of the District Attorney herself, or that the ADA who was actively involved in plea negotiations did not have the necessary authority to be involved in said negotiations.
The court informed the ADA that this matter was beyond “Standards and Goals” and that she had repeatedly assured the court that a resolution would be forthcoming on November 1, 2007 and, because of the repeated representations of an imminent disposition, the court had adjourned the matter to that date, as well as on previous occasions. The court advised the ADA to consult with her supervisors and return with a firm offer of either an ACD or dismissal later that day, as she had represented to the court in her October 2007 phone communication. The court and the supervising judge for the criminal courts for the Ninth Judicial District spoke with the ADA’s supervisors and defense counsel and expressed their concerns regarding the length of time that had passed during plea negotiations, the repeated assurances of a noncriminal disposition and that now there was no firm offer from the People — other than to say that the case would be disposed of with a noncriminal disposition— and requested that an offer be made by the end of the day. At the end of the day, ADA Lopez advised the court that the District *369 Attorney refused to make any offers[3] until defendant turned over the tape and the People requested that the matter be sent out for trial on all charges in the indictment.
While these actions by the District Attorney’s Office do not necessarily rise to the level of “exceptionally serious misconduct,” the court cannot but conclude that either, the People’s actions were driven by emotion rather than reason because this court and the supervising judge pressed for an immediate resolution after months of repeated representations from the People that a noncriminal disposition was imminent; or that the ADA who negotiated the dispositions all along did not have authority to make any plea offers at any time. In either event, the intransigent position that the District Attorney’s Office has now taken in this matter — when all along it was their stated intention to dispose of this case with a noncriminal resolution— weakens the court’s, the defense bar’s and the public’s confidence in the integrity of the plea bargaining process.
Additionally, on March 16, 2007, approximately a week prior to the People’s grand jury presentation in this case, defense counsel alerted the People that the complainant in this case was “involved in extorting money from [defendant] and has in fact demanded, both directly and through an intermediary, money from [defendant].” (Motion to dismiss, attached exhibit, Mar. 16, 2007 letter by Peter Goodrich.) Even though defense counsel alerted the People to this issue, defense counsel asserts the District Attorney’s Office failed to conduct an investigation with respect to any extortion claims.
(f) The Purpose and Effect of Imposing Upon the Defendant a Sentence Authorized for the Offense
The People appropriately state in their papers, “the purpose and effect of imposing a sentence upon a defendant convicted of any crime, and in particular, a serious felony offense, is to deter similar conduct by the defendant.” (People’s mem of law at 43.) However, they fail to state a single purpose of imposing a criminal sentence upon this defendant. Since July 2007, the People have represented that the matter would be resolved by either a violation, an ACD or outright dismissal; but now, through no fault on defendant’s part, he is facing the full effect of the possible sentence authorized by the felony charges, merely because (1) his attorney will not *370 turn over evidence of extortion (the tape), or (2) the ADA involved in plea negotiations did not have the actual authority to make any offer, or (3) of some misdirected emotional reaction. To sentence this defendant as a sex offender and expose him, and his family, to the myriad of conditions, regulations and rules associated with being convicted and designated as a sex offender would be a travesty of justice, given the facts of this case.
(g) The Impact of Dismissal Upon the Confidence of the Public in the Criminal Justice System
The court agrees with defendant that continuation of this case, instead of its dismissal, would negatively impact upon the confidence that the public would have in our criminal justice system. There seem to be genuine questions as to defendant’s guilt beyond his legal presumption of innocence, the strength of the People’s case and the credibility of the complainant. The People have previously offered defendant a noncriminal disposition. Now, without explanation, the People rescind all offers, cease negotiations, through no fault on defendant’s part, and demand a trial as charged. How can the public have confidence in our criminal justice system when they cannot trust the sanctity of plea bargaining negotiations?
Moreover, on December 20, 2007, the court inquired as to the change in the People’s position regarding a resolution to the instant case:
“court: . . . can you explain to me how we go back from an ACD/dismissal to a trial on a D felony?
“ms. lopez: I would say it is a breakdown in communication.
“court: In the office?
“ms. lopez: That’s it. I can’t say more.
“court: In the office?
“ms. lopez: Correct.” (Transcript of proceedings, Dec. 20, 2007, at 51.)
For the People to withdraw an offer, cease negotiations and demand a trial as charged, after months of negotiating toward a noncriminal disposition or outright dismissal, would have a negative impact on the public’s confidence in the criminal justice system, particularly where the resolution is otherwise appropriate, but is being withdrawn because of an internal breakdown in communication within the District Attorney’s Office.
*371 (h) The Impact of Dismissal on the Safety or Welfare of the Community
It is this court’s opinion that a dismissal would not negatively impact the safety or welfare of the community. Defendant only has two prior misdemeanor convictions, the most recent of which occurred 10½ years ago;[4] defendant does not have any sexually related arrests or convictions nor any violent felony arrests or convictions. In addition, all credible negotiations seemed to indicate that there are genuine questions regarding defendant’s guilt and/or the complainant’s credibility. As such, defendant would pose no threat to the community as a result of the dismissal of the charges.
(i) Where the Court Deems it Appropriate, the Attitude of the Complainant or Victim With Respect to the Motion
While the People claim that the complainant, as recent as November 30, 2007, wished to proceed with the instant case, and thus, opposed the instant motion, the court cannot ignore the complainant’s attitude during the pendency of this case, which is part of this motion. At some point during the pendency of these proceedings, the complainant informed the People that she wished to withdraw all charges; the People conveyed this to defendant and informed defendant that they were waiting for the complainant to sign a withdrawal statement before the case could be dismissed. However, several months passed and the People were unable to communicate with the complainant. The People admitted that she was uncooperative and failed to return the ADA’s phone calls from the latter part of May until the end of August 2007. The People indicated that the complainant wished to withdraw all charges because she was being threatened by friends and/or associates of the defendant. When the court questioned the People during the December 20, 2007 proceedings, the People admitted that they did not investigate the alleged threats that the complainant allegedly received. In fact, the court questioned, in pertinent part:
“court: . . . is it a wrong assumption for me to make that by not conducting that investigation, it says something about [the victim’s] credibility . . .
“ms. lopez: No.” (Transcript of proceedings, Dec. 20, 2007, at 48.)
*372 It is abundantly clear that the People had their own reservations regarding the complainant’s credibility.
Based on the foregoing discussion of the above enumerated factors, as well as all pleadings and proceedings had herein, the court finds that there are compelling factors that require dismissal of the indictment in the interest of justice.
Accordingly, indictment number 07-0347 is dismissed in its entirety.

. The court then took a recess and went to TAP where the supervising judge of the criminal courts was presiding. Since the court had been previously instructed to either resolve the case or send it to TAR a consultation seemed appropriate before granting an adjournment. It was discussed with the supervising judge and ADA McCarty, First Deputy District Attorney, with defense counsel present, that since the offers contemplated were an ACD or an outright dismissal, it was the court’s position that there was no need for further adjournment.

. While the People include what they term as “facts relevant to the above charges,” the court notes that Assistant District Attorney Michelle Lopez, who was handling the plea negotiations in this matter, did not prepare the opposition papers, nor did she provide an affidavit regarding the “relevant facts.” Rather, another Assistant District Attorney, John J. Carmody, wrote the affirmation in opposition to the motion to dismiss. In that affirmation, the People state that the papers were prepared after conversations with ADA Michelle Lopez, but glaringly omit crucial facts relating to the plea negotiations and representations made by ADA Michelle Lopez to defense counsel and the court on and off the record.

. This belies the fact that offers had already been conveyed to defendant and the court.

. The People allude to a 2007 trespass charge that was pending in local court; the court has learned that defendant pleaded guilty to a violation (Penal Law § 140.05) and received a conditional discharge in that case.